Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN KNISELY, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| TERRAN ORBITAL CORPORATION, MARC BELL, DANIEL STATON, JAMES LACHANCE, TOM MANION, RICHARD Y. NEWTON, III, TOBI PETROCELLI, DOUG RAABERG, and STRATTON SCLAVOS, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, John Knisely ("Plaintiff"), by and through his attorneys, alleges upon information

and belief, except for those allegations that pertain to him, which are alleged upon personal

knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Terran Orbital Corporation

("Terran" or the "Company") and the Company's Board of Directors (the "Board" or the

"Individual Defendants," and collectively with the Company, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to sell the Company to Lockheed Martin Corporation ("Parent"),

through a wholly owned subsidiary, Tholian Merger Sub, Inc. ("Merger Sub," and together with Parent, "Lockheed Martin"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 21, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the deal, Lockheed Martin will acquire all outstanding shares of Terran Orbital for $0.25 in cash.

3.      Thereafter, on September 9, 2024, the Company filed its Preliminary Proxy Statement (the "Proxy Statement") on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company insiders own large illiquid blocks of company shares and Restricted Stock Units ("RSUs"), all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction.

5.      The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Terran, provided by the Company to the Company's financial advisor, Lincoln International LLC ("Lincoln"); and (c) the data and inputs underlying the financial valuation

analyses, if any, that purport to support the fairness opinions created by Lincoln, and provided to the Board and the Special Committee of the Company Board (the "Special Committee").

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Pennsylvania and, at all times relevant hereto, has been a Terran stockholder.

8.     Defendant Terran manufactures and sells satellites for aerospace and defense industries in the United States and internationally. Terran is incorporated under the laws of the State of Delaware and has its principal place of business at 6800 Broken Sound Parkway NW, Suite 200, Boca Raton, FL 33487. Shares of Terran common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "LLAP."

9.     Defendant Marc Bell ("Bell") has been the Chair of the Board of Directors of the Company at all relevant times. In addition, Defendant Bell serves as its Chief Executive Officer ("CEO").

10.     Defendant Daniel Staton ("Staton") has been the Vice Chairman of the Board of Directors of the Company at all relevant times.

11.     Defendant James LaChance ("LaChance") has been a director of the Company at all relevant times.

12.     Defendant Tom Manion ("Manion") has been a director of the Company at all relevant times.

13.     Defendant Richard Y. Newton, III ("Newton") has been a director of the Company at all relevant times.

14.     Defendant Tobi Petrocelli ("Petrocelli") has been a director of the Company at all relevant times.

15.     Defendant Doug Raaberg ("Raaberg") has been a director of the Company at all relevant times.

16.     Defendant Stratton Sclavos ("Sclavos") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 9-16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent Lockheed Martin, a security and aerospace company, engages in the research, design, development, manufacture, integration, and sustainment of technology systems, products, and services worldwide.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

23.    Defendant Terran manufactures and sells satellites for aerospace and defense industries in the United States and internationally. The company offers end-to-end satellite solutions. It engages in the integrated design, manufacture, and assembly of satellites; and management, operation, and provision of information from satellites that are on-orbit on behalf of its customers from its in-house mission operations centers and integrated international ground communications network using its proprietary software both on the satellite and throughout its ground infrastructure.

### *The Flawed Sales Process*

24.    As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Lockheed Martin.

25.    The Proxy Statement fails to disclose why the Company Board did not prepare a liquidation analysis and provide it to its shareholders given the liquidity issues referenced throughout the Proxy Statement.

26.     The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Lockheed Martin, and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

27.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

28.     On August 15, 2024, Terran and Lockheed Martin issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> BETHESDA, Md., Aug. 15, 2024 /PRNewswire/ -- Lockheed Martin [NYSE: LMT] today announced the signing of a definitive agreement to acquire Terran Orbital [NYSE: LLAP], a global leader of satellite-based solutions primarily supporting the aerospace and defense industries.
>
> Terran Orbital brings a high throughput, robotic manufacturing capacity and high-performing modular space vehicle designs. Combined with Lockheed Martin's record of performance and innovation, this transaction will usher in an even broader range of capabilities and value for customers. Lockheed Martin uses Terran Orbital's satellites for its work, most notably with the Space Development Agency's Transport and Tracking Layer programs, and in several of its self-funded technology demonstrations.
>
> "We've worked with Terran Orbital for more than seven years on a variety of successful missions," said Robert Lightfoot, president, Lockheed Martin Space. "Their capabilities, talent and business momentum align with Lockheed Martin Space's strategic plans – and we're looking forward to welcoming them to our team. Our customers require advanced technology and even faster product development, and that's what we can achieve together."
>
> The transaction stands to pave a path for further advancement, as Lockheed Martin continues to invest in technology, people, and capacity to support future customer needs.
>
> "This transaction combines our strengths and expertise," said Marc Bell, chairman, CEO, and co-founder of Terran Orbital. "This move will open new opportunities for growth and innovation, and we couldn't be more excited about the future. Access to Lockheed Martin's incredible engineers and world class facilities will only accelerate our business plan to provide low-cost, high-value solutions to our ever-growing customer base."

**Transaction Details**

The enterprise value of the transaction is approximately $450 million. Lockheed Martin will acquire Terran Orbital for $0.25 in cash for each outstanding share of common stock and retire its existing debt. This transaction also provides for Lockheed Martin and other current Terran Orbital creditors establishing a new, $30 million working capital facility that has been put in place as of signing.

The transaction is expected to close in fourth quarter of 2024 and is subject to the satisfaction of customary closing conditions, including regulatory and Terran Orbital stockholder approvals. Upon closing, Terran Orbital will remain a commercial merchant supplier to industry.

**Proven Spacecraft Portfolio and Technology**

Terran Orbital has a track record of supporting more than 80 missions over the past decade for government and commercial customers with complex mission requirements, from low earth orbit to the Moon and beyond. As of today, Lockheed Martin is Terran Orbital's largest customer. This longstanding working relationship between the companies underpins a strong cultural alignment and ability to recognize synergies between the two businesses.

Terran Orbital joined the Lockheed Martin Ventures (LM Ventures) portfolio – a fund that makes investments in technology innovations to drive growth in existing, adjacent and new segments for the company – with an initial investment in 2017. LM Ventures has since made two additional investments in Terran Orbital in 2020 and 2022. This marks the first LM Ventures company that Lockheed Martin has sought to acquire since founding the fund in 2007.

*Potential Conflicts of Interest*

29.     The breakdown of the benefits of the deal indicates that Terran insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Terran.

30.     In addition, Company insiders currently own large illiquid blocks of company shares and RSUs, all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares of Company Common Stock (#) | Company RSUs (#)(1) | Company Options (#) | Value ($) |
|---|---|---|---|---|
| **Executive Officers** | | | | |
| Wahid Azizpor | 68,908 | 390,271 | — | 114,794.75 |
| Richard Bays | 30,716 | 180,615 | — | 52,832.75 |
| Marc Bell | 12,891,068 | 2,919,000 | — | 3,952,517.00 |
| James S Black | 50,174 | 201,000 | — | 62,793.50 |
| Matthew Gann* (2) | 159,462 | 28,016 | 110,340 (5) | 46,869.50 |
| Anthony J Gingiss* (3) | 46,567 | — | — | 11,641.75 |
| Gary A. Hobart | 718,534 | 1,560,899 | — | 569,858.25 |
| Stephen Alan Hobart* (4) | 15,613 | — | — | 3,903.25 |
| Peter Krauss | — | 400,000 | — | 100,000.00 |
| Mark Kula | 70,517 | 388,125 | — | 114,660.50 |
| Santina M Michel | 70,060 | 324,084 | — | 98,536.00 |
| Adarsh Parekh | — | 300,000 | — | 75,000.00 |
| Mathieu Riffel | 47,105 | 236,171 | — | 70,819.00 |
| Jonathan Siegmann* | — | — | — | — |
| Marco Villa | 6,432,844 | 598,015 | — | 1,757,714.75 |
| **Directors** | | | | |
| James LaChance | 451,862 | 176,922 | 82,616 (5) | 157,196.00 |
| Thomas Manion | 176,111 | 176,922 | — | 88,258.25 |
| Richard Newton III | 154,762 | 141,922 | — | 74,171.00 |
| Tobi Petrocelli | 129,275 | 141,922 | — | 67,799.25 |
| Douglas Raaberg | 154,762 | 141,922 | — | 74,171.00 |
| Stratton Sclavos | 172,091 | 337,031 | — | 127,280.50 |
| Daniel Staton | 13,286,022 | 141,922 | — | 3,356,986.00 |

31.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

32.     Thus, while the Proposed Transaction is not in the best interests of Terran, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

33.     The Terran Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially

misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

34. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

  a. Why the Company Board did not prepare a liquidation analysis and provide it to its shareholders given the liquidity issues referenced throughout the Proxy Statement;

  b. Whether the confidentiality agreements entered into by the Company with Lockheed Martin differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners; and

  c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Lockheed Martin, would fall away.

35. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Terran's Financial*
*Projections*

36.     The Proxy Statement fails to provide material information concerning financial projections for Terran provided by Terran management to the Board, Lincoln, and relied upon by Lincoln in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

37.     Notably the Proxy Statement reveals that as part of its analyses, Lincoln reviewed, "Company's budget and financial projections assuming a fully funded business plan for the fiscal years ending December 31, 2024 through December 31, 2028, prepared and provided by management of the Company, which we refer to as the "Financial Projections.""

38.     Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Terran management provided to the Board and Lincoln. Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

39.     With regard to the *Financial Projections* provided by Terran Management, the Proxy Statement fails to disclose material line items for the following metrics:

   a.  Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

   b.  Adjusted Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

    c.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

    d.   Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same;

    e.   Net Working Capital, including all underlying inputs, metrics, and assumptions used to calculate same;

    f.   Contract Assets, including all underlying inputs, metrics, and assumptions used to calculate same;

    g.   Contract Liabilities, including all underlying inputs, metrics, and assumptions used to calculate same; and

    h.   Net Contract Assets, including all underlying inputs, metrics, and assumptions used to calculate same.

40.    The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

41.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

42.    Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lincoln's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lincoln*

43.     In the Proxy Statement, Lincoln describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

44.     Regarding the *Discounted Cash Flow Analysis*, disclose:

a.  The inputs, metrics, and assumptions used to determine the 27.7% tax rate utilized;

b.  The inputs, metrics, and assumptions used to determine discount rate range of 21.0% to 23.0% utilized;

c.  The inputs, metrics, and assumptions used to determine the EBITDA multiples range of 9.0x to 11.0x utilized; and

d.  The Company's weighted average cost of capital utilized.

45.     With regard to the *Selected M&A Transactions Analysis*, the Registration Statement fails to disclose material line items, including the following:

a.  The date on which each selected transaction closed;

b.  The inputs, metrics, and assumptions used to determine the LTM Revenue multiples range of 2.50x to 3.25x utilized; and

c.  The inputs, metrics, and assumptions used to determine the 2024 Revenue multiples range of 1.50x to 2.00x utilized.

46.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

47.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Terran stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

48.    Plaintiff repeats all previous allegations as if set forth in full herein.

49.    Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

50.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

51.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

52.    The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

53.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

54.    The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

55.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

56.     Plaintiff repeats all previous allegations as if set forth in full herein.

57.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

58.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

59.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Terran's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

60.    The Individual Defendants acted as controlling persons of Terran within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Terran to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Terran and all of its employees. As alleged above, Terran is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 20, 2024                   **BRODSKY & SMITH**

                                    By: *Evan J. Smith*
                                        Evan J. Smith
                                        240 Mineola Boulevard
                                        Mineola, NY  11501
                                        Phone:  (516) 741-4977
                                        Facsimile (561) 741-0626

                                        *Counsel for Plaintiff*